### In re NEYLAND & McKEITHEN.

(District Court, S. D. Mississippi, Jackson Division.   September, 1910.)

1. BANKRUPTCY (§ 407*)—PARTNERSHIP—DISCHARGE—FALSE STATEMENT.

Where a member of a firm, as an inducement to obtaining credit from an objecting creditor, made a materially false statement of the firm's assets and liabilities, and the creditor extended credit to the firm on the faith of such statement for goods subsequently sold, the firm was not entitled to a discharge in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

2. BANKRUPTCY (§ 407*)—MATERIALLY FALSE STATEMENT—TRUTHFULNESS—INVESTIGATION.

An objecting creditor, extending credit to the bankrupt on the faith of a materially false statement in writing, made to obtain credit, is not required to investigate the truthfulness of the statement, especially when it declares on its face that it is true and is given to establish credit.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

3. BANKRUPTCY (§ 407*)—PARTNERSHIP.

Where one member of a firm made a materially false statement in writing to an objecting creditor to obtain credit, and it appeared from the statement that the firm was then in existence, the creditor was not required to investigate the partnership contract so as to determine when one of the partners entered the firm.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

4. BANKRUPTCY (§ 404*)—PRIOR DISCHARGE—CONSTRUCTION.

Where, in a prior bankruptcy proceeding against a partnership, the firm only, as distinguished from the firm and individual partners, was adjudged a bankrupt, an order of discharge, though purporting to discharge the individual partners as well, would be construed as a discharge of the firm only.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 404.*]

5. BANKRUPTCY (§ 404*)—PARTNERSHIP—DISCHARGE—EFFECT.

Under the entity doctrine of the ownership of partnership and individual property, a discharge of a firm in former bankruptcy proceedings was no bar to a subsequent discharge of another firm within the six-year period of which one of the partners of the former firm was a member.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 404.*]

6. BANKRUPTCY (§ 404*)—DISCHARGE—PARTNERS.

The discharge in bankruptcy of a firm from firm debts would not relieve the individual members of the firm from liability for firm debts as a matter of law, where no individual adjudication was had.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 404.*]

In Bankruptcy.   In the matter of bankruptcy proceedings of Neyland & McKeithen.   On objections to discharge.   Objections sustained on the opinion and findings of F. M. West, special master and referee, which are as follows:

To the Court:

On September 10, 1909, by proper order of this court, the undersigned was appointed as special master to find the facts and report my conclusions thereon upon certain objections filed by creditors to the discharge of the above-named bankrupts.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

I find the facts as follows:

On June 7, 1909, C. H. Neyland and C. W. McKeithen, composing the partnership of Neyland & McKeithen, filed their petition in bankruptcy and prayed that the said firm be adjudged bankrupt accordingly.

On the same date the matter was referred to your special master, a referee of this court, for further administration, the judge being absent from the district; and on said date the said firm was properly adjudged a bankrupt as prayed in said petition, the individuals not being adjudicated. The prayer of the petition is in the following words: "Wherefore your petitioners pray that the said firm may be adjudged by a decree of the court to be bankrupts within the purview of said acts."

On August 2, 1909, said bankrupts filed their petition praying that "they and the firm of Neyland & McKeithen may be decreed by the court to have a full discharge from all debts provable against the estate of Neyland & McKeithen under the said bankruptcy acts, except such debts as are excepted by law from discharge."

If the bankrupts intended to pray for an individual discharge, it would appear that they are asking for something not contemplated in the adjudication, since only the firm, and not the individual members, was adjudged a bankrupt.

The notices to creditors upon the motion for discharge show that a partnership discharge only was prayed.

On August 30, 1909, the following objections were specified by the B. Lowenstein & Bros. Dry Goods Company, a creditor of the bankrupts:

"The B. Lowenstein & Bros. Dry Goods Company, a corporation duly chartered, organized, and existing under and by virtue of the laws of the state of Delaware, a party interested in the estate of said Neyland & McKeithen, bankrupts, do oppose the granting of a discharge from said debts, and for grounds of opposition do file the following specifications:

"(1) Upon August 25, 1908, this objector, being ignorant of the financial condition of said bankrupts, did exact and require that, for the purpose of obtaining credit with it, it execute in writing and deliver to this objector a statement in writing showing their true financial condition and net worth, and that said bankrupts, well knowing such facts, and for the purpose of so complying with said action, did, upon said date, by C. W. McKeithen, a partner, make, execute, and deliver to said objector a certain statement in writing, a copy of which is hereunto annexed and marked 'Exhibit A,' and made a party hereof as fully as if copied herein, whereunder and whereby said bankrupts did then and there represent unto this objector that upon said date the total amount then and there owing by said firm was the sum of $4,000, which statement this objector then and there believed, and which statement was then and there materially untrue and false, in that said bankrupts then and there owed debts in excess of $7,000. That said firm then and there represented that the property owned by said firm applicable to its debts was the sum of $20,000, and that the net worth of said firm was then and there the sum of $16,000, which said statement was then and there made for the purpose of obtaining credit with this objector, and which statement was then and there wholly false, as said firm was then and there, as well as the several members thereof, wholly insolvent and having no net worth. That, in pursuance of said statement, this objector, believing it to be true and correct, in reliance thereon, did extend to said firm credit, and did sell to said firm divers goods, wares, and merchandise of great value, at the special instance and request of said firm, and the purchase money whereof is still owing and unpaid, and that upon said materially false statement said firm of bankrupts did then and there obtain said property from said objector upon said statement which was then and there wholly false and untrue, and that by reason of this your objector prays that a discharge be refused to said bankrupts, but that they be allowed so to continue and for proper reference.

"(2) And as to said Neyland, both individually and as a member of said firm, and said firm, that he was in voluntary proceeding as a member of Schwartz & Neyland, within six years, to wit, February 10, 1906, granted a discharge from his said indebtedness therein, and that said petitioner is not therefore entitled to said discharge."

184 F.—10

The said specifications appear to be in proper form.  **The** statement filed as exhibit to the specifications is as follows:

### "Credit Department.

"Office of B. Lowenstein & Bros. Dry Goods Co., Memphis, Tenn.

"Memphis, Tenn. Aug. 25th, 1908.

"Style of firm:  Neyland & McKeithen.  P. O.:  Woodville, Miss.

"B. Lowenstein & Bros. Dry Goods Co., Memphis, Tenn.

"Gentlemen:  Below we give you a full and correct statement of our affairs for the purpose of establishing a credit with you:

### "Assets.

| | |
|---|---|
| 1. Actual value of stock on hand.............................. | $ 8,000 00 |
| 2. Notes and accounts good and collectible................... | 1,000 00 |
| 3. Cash in hand and in bank................................ | 000 00 |
| 4. Real estate at present cash value, excluding homestead, C. H. Neyland.................................................. | 10,500 00 |
|    C. H. Neyland, stocks.................................... | 900 00 |
| 5. Other assets, consisting of.............................. | 000 00 |

|  |  |
|---|---|
| Total assets...................................... | $20,400 00 |

### "Liabilities.

| | |
|---|---|
| 6. For Mdse. on open account, not due ⎫ <br> 7. For Mdse. on open account, past due ⎭ ................. | $ 4,000 00 |
| 8. For Mdse. closed by note or acceptance.................. | 000 00 |
| 9. For borrowed money to bank............................. | 000 00 |
| 10. For borrowed money to friends.......................... | 000 00 |
| 11. For borrowed money to relatives........................ | 000 00 |
| 12. For advances from your comm'n merchant................. | 000 00 |
| 13. Mortgage or deed of trust on real estate................. | 000 00 |
| 14. Endorsers or security for other parties.................... | 000 00 |

| | |
|---|---|
| Total liabilities.................................. | $ 4,000 00 |

15. Do you, or any member of your firm, owe any private or confidential debts?.................................... **None**
16. How much do you consider yourself worth, net?........... $16,400 00
17. Former location........How long in business?  Succeeded C. W. McKeithen.
18. Former occupation?........Amount of annual sales........
19. Building insured for $...... Don't know.
20. Stock of goods insured for............................. $ 4,000 00
21. What bank do you do business with?  Bank of Woodville, Citizens' Bank.

Give names of houses of whom you buy principally and amount you owe each.

| Names. | Amount. | Names. | Amount. |
|---|---|---|---|
| Dry Goods.  B. L. & Bros. | | Hats.  Pioneer Hat Works. | |
| "          " | | Furnishing Goods.  United S. & C. Co. | |
| "          " | | Groceries.  ........ | |
| Shoes.  Geo. D. Witt Shoe Co. | | " | |
| " | | Comm'n Mcht. | |
| " | | Others. | |
| Clothing.  Bray Clo. Co. | | ................................. | |

"Individual names of partners:  C. W. McKeithen.  C. H. Neyland.
"By whom signed:  C. W. McKeithen. .
"[Sign here full name of firm.]
"[Signed]                                      Neyland & McKeithen."

For convenience I have numbered the items of the statement.

The bankrupts filed sworn answer to these specifications, as follows: "Defendant admits that in August of 1908 C. W. McKeithen did, for the firm of Neyland & McKeithen, make a statement in writing to the said B. Lowenstein Bros. Dry Goods Company, showing the then condition of the firm and of the partners, and their net worth, which statement is exhibited in the objection of the B. Lowenstein Company aforesaid and marked 'Exhibit A'; but defendant denies that there is anything materially false in the aforesaid statement, and avers that the financial condition of the firm of Neyland & McKeithen and the partners is therein set forth with truth and as much particularity as could possibly be, without any shadow of falsehood or any intention to defraud, and the same he stands ready to verify on proper hearing before this honorable court. Denies that Neyland & McKeithen were bankrupts at the time of giving aforesaid statement; denies that they were indebted in the sum of $7,000. Wherefore defendant prays that the objection of the said B. Lowenstein & Bros. Dry Goods Company be dismissed for want of sufficiency and particularity of his allegations, and that Neyland & McKeithen be granted proper discharge."

The objector was a creditor of bankrupts with proven claim of $837.93, represented by several promissory notes.

I find that the said statement is materially false and untrue. Item 4 is as follows: "Real estate at present cash value excluding homestead, C. H. Neyland, $10,500.00; C. H. Neyland, stocks, $900.00."

The only real estate owned by C. H. Neyland at the time of said statement was a lot somewhere in Oklahoma, the exact location not being shown, which cost him $800, and valued by McKeithen at about $500, and a house and lot in Jackson, Miss., worth about $3,000, and under mortgage to a building and loan association. The amount of the mortgage was about $500. The answer of bankrupt Neyland, supra, admits the execution of the statement, vouches for its correctness, and expresses a willingness to verify said correctness. The proof does not so verify it. Mr. Neyland endeavored to show that the estimate of $10,500 of real estate was correct by testifying that he had sold one Robinson some real estate with reservation of vendor's lien, for the payment of which land he (Neyland) had accepted Robinson's promissory note. I do not consider this as "land" by any means. He also included in the figures the value of a homestead worth about $5,000 and worth about $2,000 over and above the legal exemption. This homestead was not Neyland's, but was the property of his wife; the title being in her name. The homestead was assessed to Neyland, but that is not conclusive, and Neyland testified that the title was in his wife. He also figured a one-half interest in a certain delinter, owned several years ago by himself and one Lewis; yet he testified that his half interest was transferred in 1903 to his wife.

Item 14 is also untrue. That item is as follows: "Mortgage or deed of trust on real estate, 000,00."

The testimony is that there was a mortgage of about $500 on the property in Jackson, Miss.

I have not deemed it necessary to a proper conclusion herein to ascertain the facts as to the other grounds raised by objector in specification No. 1, since the above findings are sufficient, in my judgment, to sustain the allegation of untruth.

McKeithen was the son-in-law of Neyland, and the statement and proof shows that the firm succeeded said McKeithen in the business.

Objector affirms, in its specifications, that goods were sold to the bankrupts upon the faith and truthfulness of the said statement. This is not denied by the bankrupts. On the contrary, the statement shows on its face that it was made for the purpose of establishing a credit with the objector; and McKeithen testified that goods were bought of objector after the rendition of said statement. Neyland, although admitting the truthfulness, in his answer, of the statement prepared by McKeithen, his partner, testified that he knew nothing of the statement until after the bankruptcy proceedings were had; and testified that he was not a partner at the time of the preparation of the said statement; that the arrangement with McKeithen was that he (Neyland) was to put $2,000 into the business, in installments of

$500, beginning in the early part of the year 1908, and that he was to become a partner in the business after October 1, 1908. The testimony of the "Woodville Republican," a newspaper published in Woodville, Miss., the place of business of said bankrupts, shows that the first notice of the partnership was published in that paper on September 12, 1908, or 19 days after the execution of the statement to objector.

I am of opinion that Neyland is now estopped to set up, for the first time, that he was not a partner in the business at the time of the execution of the said statement.

I find the law to be that if a statement is materially false, and made for the purpose of obtaining property, and such property was sold upon the truth and faith of such statement, that credit was obtained because of the said statement, and that the said statement was made by the bankrupt, a discharge will be denied the bankrupt.

It will be borne in mind that McKeithen was the son-in-law of Neyland. He had no property except above exemptions, the stock of goods and accounts, and owed, according to his own testimony, about $4,000. The statement shows it was made for the purpose of obtaining credit; and McKeithen, even if he did not know the exact status of his father-in-law's financial affairs, could have ascertained such with little exertion, and could have rendered a thoroughly truthful and correct statement with a little investigation. These kind of statements are requested by creditors for the purpose of ascertaining the true condition of a customer's affairs, and if McKeithen found out, or could have found out, that his statement was not true, he should have advised the objector so that it would have been correctly informed.

McKeithen could have said, in the statement, that the partnership was not to be effective until October 1, 1908; but no mention was made to that effect, and, so far as the statement shows, and the proof discloses, the statement was made by a partnership in esse at the time of the rendition of said statement.

As to Neyland being estopped to set up the defense, supra, I recall the general rule regarding estoppel, as follows: "Estoppel by misrepresentation, or equitable estoppel, is defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who, in good faith, relied upon such conduct, and has been led thereby to change his position for the worse, and who, on his part, acquires some corresponding right either of contract or of remedy. This estoppel arises when one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth, and to deprive the party who has acted upon it of the benefit obtained. The doctrine of estoppel in pais, although it has been characterized as odius, a harsh doctrine, and not to be favored, on the ground that it tends to exclude the truth, is no longer to be regarded. The doctrine is derived from courts of equity, and is interposed to prevent injustice, and to guard against fraud by denying to a person the right to repudiate his acts, admissions, or representations, when they have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence. It will be allowed to shut out the truth only when necessary to do justice, and never where it would itself operate as a fraud or work injustice. The estoppel is a protective and not an offensive weapon, and its operation should be limited to saving harmless or making whole the person in whose favor it arises, and should not be made an instrument of gain or profit." 16 Cyc. p. 722 et seq.

The objector was not called upon to investigate the truthfulness of the statement when the statement declares itself that it is true, and is given for the purpose of establishing credit; nor do I think the objector was called upon to ascertain the arrangement as to when Neyland was to become a

partner. It is hardly likely, anyway, that any goods reached the bankrupts between August 25th and September 12th, on which latter date the partnership was in effect, and not October 1st, as testified to by Neyland. For further authority as to estoppel, see the following: In re Schachter (D. C.) 22 Am. Bankr. Rep. 389, 170 Fed. 683; In re Stoddard Bros. Lumber Co. (D. C.) 22 Am. Bankr. Rep. 435, 169 Fed. 190.

The law as to a denial of a discharge because of false statement, made for the purpose of obtaining credit, is so clearly and elaborately discussed in Collier on Bankruptcy (7th Ed.) 284 et seq., that I shall not attempt to discuss the law further here, but refer to that authority. In addition to that authority and the notes, I would call attention to the following cases: In re Terens (D. C.) 22 Am. Bankr. Rep. 895, 172 Fed. 938; In re Darevski (D. C.) 22 Am. Bankr. Rep. 571, 171 Fed. 288; In re Shaffer (D. C.) 22 Am. Bankr. Rep. 147, 169 Fed. 724.

In the recent case of Hardie v. Swafford Bros. Dry Goods Co., 21 Am. Bankr. Rep. 457, 165 Fed. 588, 91 C. C. A. 426, 20 L. R. A. (N. S.) 785, the court said: "The release of the honest, unfortunate, and insolvent debtor from the burden of his debts and his restoration to business activity in the interest of his family and the general public are the main, if not the most important, objects of Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), and the burden of proof is upon creditors opposing the granting of a discharge to bring the inculpatory facts alleged by them strictly within the exceptions enumerated in said statute. Where in the regular course of a partnership business one partner makes a materially false statement in writing, upon the faith of which property is obtained upon credit by the firm, the fraud thus committed may not be interposed as a bar to a discharge of a partner who did not participate in the wrongful act, and had no knowledge thereof"—Shelby, Circuit Judge, dissenting.

That case does no violence to the views already expressed herein. There the three individual members of the firm were adjudged bankrupts, as well as the firm itself. The individuals applied for discharge, and, when objections were filed thereto, two of the members withdrew their applications for a discharge, leaving the objections on file as to the remaining member of the firm. The court decided as indicated, supra. A reading of that case will show it to be easily distinguishable from the one at bar.

The second specification of the objector presents a question of some difficulty. It follows: "And as to the said Neyland, both individually and as a member of said firm, and said firm, that he was in voluntary proceeding as a member of Schwartz & Neyland within six years, to wit, February 10, 1906, granted a discharge from his said indebtedness therein, and that said petitioner is not therefore entitled to said discharge."

Objector is mistaken as to the date of the discharge in the former proceeding, since I find it to be July 11, 1906, instead of February 10, 1906; the latter date being the date of adjudication.

On February 10, 1906, Schwartz & Neyland, a partnership composed of Leon Schwartz and C. H. Neyland, filed their petition in this court, praying that they, as a firm, be adjudged bankrupt. On the same day the said firm was adjudged a bankrupt by J. B. Stirling, Esq., a referee in bankruptcy of this court. No individual petition was filed, nor was an individual adjudication had; only the firm being adjudged bankrupt. The Neyland in that proceeding is the same person in the instant case.

It would appear from a hasty glance at the discharge in the former proceeding as if more were granted therein than contemplated in the adjudication; said discharge reading as follows: "Whereas, Schwartz & Neyland and Leon Schwartz and C. H. Neyland, of Woodville, in said district, has been duly adjudged a bankrupt under the acts of Congress relating to bankruptcy, and appears to have conformed to all the requirements of law in that behalf, it is therefore ordered by this court that said Schwartz & Neyland be discharged from all debts and claims which are made provable by said acts against his estate, and which existed on the 10th day of February, A. D. 1906, on which day the petition for adjudication was filed by him excepting such debts as are by law excepted from the operation of a discharge in bankruptcy."

I take it, however, that the words; "and the said Leon Schwartz and C. H. Neyland" are mere words of surplusage, since the preamble refers to the adjudication in the following words. "Whereas, Schwartz & Neyland and Leon Schwartz and C. H. Neyland has been duly adjudged bankrupt," etc., etc., and the adjudication clearly declared only the firm to be bankrupt, and certainly the discharge can grant no more than is contemplated by the adjudication itself. No individual adjudication was had in that proceeding, and surely no individual discharge should be granted, or could have been granted.

The adjudication in the former proceeding is as follows: "In the matter of Schwartz & Neyland, a firm composed of Leon Schwartz and C. H. Neyland, bankrupts. In bankruptcy. At Jackson, Miss., in said district, on the 10th day of February, A. D. 1906, before the Honorable J. B. Stirling, referee of said court in bankruptcy, the petition of Schwartz & Neyland, a firm composed of Leon Schwartz and C. H. Neyland, that they be adjudged bankrupts within the true intent and meaning of the act of Congress relating to bankruptcy, having been heard and duly considered, the said Schwartz & Neyland are hereby declared and adjudged bankrupts accordingly. The first meeting of their creditors will be held at the office of." etc., etc.

If it be held, however, that C. H. Neyland was individually discharged in the former proceeding, certainly he could not be individually discharged in the present proceeding, because of discharge in the former proceeding, being within six years; but it should be noted that the individual discharges, the firm only praying such relief, though the objector is opposing a discharge of C. H. Neyland, individually and as a member of the firm, and of the firm itself, because of the former proceeding.

There are therefore two questions presented for determination, because of objector's second specification, as follows:

First. Is the firm of Neyland & McKeithen entitled to a discharge, notwithstanding the discharge of Schwartz & Neyland within six years in the former proceeding?

The entity doctrine teaches that the firm, and the individual members thereof, are to be treated as separate and distinct persons, each of which may have different liabilities, and assets, and the assets of each are to be first applied to the corresponding liabilities.

This being true, therefore, I should say that, so far as the discharge of Schwartz & Neyland as a firm may affect Neyland & McKeithen as a firm, in the present proceeding, the release of the former firm from its debt should not bar a discharge of the present firm from its firm debts.

Second. Would the discharge of the former firm of Schwartz & Neyland, from its firm debts, operate as a bar to the discharge of C. H. Neyland individually for liability for the firm debts, or individual, either, in the instant case?

It will be seen at a glance that a troublesome question is presented, which is: "Does a discharge of a firm from firm debts release the individual members of the firm from liability for firm debts, as a matter of law, where no individual adjudication has been had?"

It should be noted, to repeat, that C. H. Neyland was not individually adjudged a bankrupt in the instant case, neither does his petition ask for such an adjudication, nor does the application ask for individual discharge.

To correctly answer the question here presented has been the aim of many courts since the act of 1898, and there is much confusion on the subject. A reading of Collier on Bankruptcy (7th Ed.) 125 et seq., demonstrates this assertion beyond doubt.

However, the recent case of In re Bertenshaw, 19 Am. Bankr. Rep. 577, 157 Fed. 363, 85 C. C. A. 61, 17 L. R. A. (N. S.) 886, answers the question by holding that an individual member of a firm is not discharged from liability for firm debts unless he be individually adjudicated, and individually discharged. That case, the opinion of which was read by Sanborn, J., of the Circuit Court of Appeals for the Eighth Circuit, in November, 1907, discusses at great length this troublesome question, reviewing the conflicting decisions, and finally decides as indicated supra. The opinion is so lengthy that I shall not attempt to insert it, or any part of it, here, but refer to it and ask the curious to read it carefully.

In the instant case, C. H. Neyland filed individual schedules in which no unsecured liabilities were listed, and the only assets listed being the homestead in Woodville, the property in Jackson, and household goods, the real estate being held by two secured creditors.

I am of opinion, therefore, that C. H. Neyland was not discharged from individual liability for the firm debts of Schwartz & Neyland, in the former proceeding; nor is he entitled to a discharge, as a matter of law, in the instant case, individually, nor from liability for the firm debts in either of the proceedings.

Wherefore I conclude that the specifications should be sustained in part, only, for the following reasons:

1. The firm should be denied a discharge because of the false statement.

2. The objection to a discharge of Neyland, individually, should be overruled, because Neyland has not prayed for an individual discharge, nor does the discharge of the two firms from firm debts relieve him from individual responsibility for such firm debts; hence, not having been previously individually discharged, that objection is not well taken here.

Green & Green, for objectors.
E. G. Shannon, for bankrupts.

NILES, District Judge. After a careful examination of the record submitted to me, the report of the special master upon objections to discharge, I find no reason to disturb the conclusions reached by said special master. If a statement is materially false, and made for the purpose of obtaining property, and such property was sold upon the truth and faith of such statement, that credit was obtained because of the said statement, and that the statement was made by the bankrupt, a discharge will be denied the bankrupt. I concur fully in the findings of the referee.